UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE MOSAIC COMPANY,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Court No. 24-00229<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT

Plaintiff The Mosaic Company ("Mosaic"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest certain aspects of the final results of the U.S. Department of Commerce's ("Commerce") second administrative review of the countervailing duty order on phosphate fertilizers from the Kingdom of Morocco ("Morocco") for the period January 1, 2022 through December 31, 2022. *See Phosphate Fertilizers From the Kingdom of Morocco: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 88,952 (Dep't Commerce Nov. 12, 2024) ("*Final Results*"), and accompanying Issues and Decision Memorandum ("IDM"). The *Final Results* are dated November 5, 2024, and were published in the Federal Register on November 12, 2024. *See Final Results*. Commerce amended the *Final Results* to correct a ministerial error. *See Phosphate Fertilizers From the Kingdom of Morocco: Notice of Amended Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 104,979 (Dep't Commerce Dec. 26, 2024). The amended *Final*

*Results* are dated December 17, 2024, and were published in the Federal Register on December 26, 2024.

## JURISDICTION

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under sections 516A(a)(2)(A)(i)(I) and (a)(2)(B)(iii) of the Tariff Act of 1930, as amended.  19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (a)(2)(B)(iii).

## STANDING

3.      Plaintiff Mosaic is a U.S. producer of phosphate fertilizers and therefore is an interested party within the meaning of 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(C). Mosaic actively participated in the administrative review challenged in this action, including by filing case and rebuttal briefs.  Mosaic has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4.      Plaintiff commenced this action by filing a summons on December 12, 2024, within 30 days after publication of the *Final Results* in the Federal Register.  Plaintiff is filing this Complaint on the next business day following 30 days after the day the summons was filed. Accordingly, this action is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rules 3(a)(2) and 6(a)(1)(C) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.      On April 7, 2021, Commerce published a notice issuing the countervailing duty order on phosphate fertilizers from Morocco.  *Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Dep't Commerce Apr. 7, 2021) (the "Order").

6. On April 28, 2023, Plaintiff submitted a timely request to Commerce to conduct an administrative review with respect to OCP S.A. ("OCP"). Letter from WilmerHale to Sec'y of Commerce, re: Phosphate Fertilizers From the Kingdom of Morocco: Request for Countervailing Duty Administrative Review (Apr. 28, 2023). On June 12, 2023, Commerce published a notice initiating an administrative review of the Order for one company, OCP, and its cross-owned affiliates. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 38,021, 38,030 (Dep't Commerce June 12, 2023). The period of review ("POR") was January 1, 2022 to December 31, 2022. *See id.*

7. On June 27, 2023, Commerce issued its initial questionnaire to the Government of Morocco ("GOM") and OCP. *See Phosphate Fertilizers From the Kingdom of Morocco: Preliminary Results of the Countervailing Duty Administrative Review, 2022*, 89 Fed. Reg. 35,800 (Dep't Commerce May 2, 2024) ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum ("PDM") at 2. Commerce investigated fifteen subsidy programs that it had previously investigated in the original countervailing duty investigation and prior administrative review, including the Provision of Phosphate Mining Rights for Less Than Adequate Remuneration ("LTAR") program; the Customs Duty Exemptions for Capital Goods, Machinery, and Equipment program; and the Provision of Port Services and Infrastructure for LTAR program. *Id.* at 9-13. OCP and the GOM submitted responses to the initial questionnaires between July and October 2023. *See id.* at 2. Plaintiff timely submitted new subsidy allegations on November 13, 2023, alleging that the GOM had provided additional subsidies, including port and vessel services and land for LTAR. Letter from WilmerHale to Sec'y of Commerce, re: Phosphate Fertilizers From Morocco: New Subsidy Allegations (Nov. 13, 2023).

8. On February 16, 2024, Mosaic and OCP submitted information from which Commerce could derive a world market benchmark price for phosphate rock for use in measuring the adequacy of remuneration of phosphate mining rights. Letter from WilmerHale to Sec'y of Commerce, re: Phosphate Fertilizers From Morocco: Petitioner's Submission of Factual Information to Measure the Adequacy of Remuneration (Feb. 16, 2024) ("Petitioner's First Benchmark Submission"); Letter from Covington & Burling LLP to Sec'y of Commerce, re: Phosphate Fertilizer from the Kingdom of Morocco: Benchmark Information and New Factual Information (Feb. 16, 2024) ("OCP's First Benchmark Submission"). OCP submitted pricing data for phosphate rock from subscription sources compiled by Fertecon and Argus, which included certain phosphate rock price series for China and Egypt. OCP's Benchmark Submission at 2-3, Exhibits NFI-1 and NFI-2.

9. Mosaic and OCP submitted rebuttal benchmark information on March 8, 2024. Letter from WilmerHale to Sec'y of Commerce, re: Phosphate Fertilizers From Morocco: Petitioner's Benchmark Rebuttal Submission (Mar. 8, 2024) ("Petitioner's Rebuttal Benchmark Submission"); Letter from Covington & Burling LLP to Sec'y of Commerce, re: Phosphate Fertilizer from the Kingdom of Morocco: Information to Rebut, Clarify, or Correct Petitioner's February 16, 2024 Submission (Mar. 8, 2024) ("OCP's Rebuttal Benchmark Submission"). In its rebuttal, Mosaic submitted new factual information demonstrating that phosphate rock prices from China and Egypt are not suitable as a benchmark. Petitioner's Benchmark Rebuttal Submission at 2-4, Exhibits 1-23.

10. OCP submitted a second benchmark submission on March 27, 2024. Letter from Covington & Burling LLP to Sec'y of Commerce, re: Phosphate Fertilizer from the Kingdom of Morocco: Benchmark Information and New Factual Information Submitted Pursuant to 19

C.F.R. §§ 351.301(c)(3)(ii) and (c)(5) (Mar. 27, 2024) ("OCP's Second Benchmark Submission"). Mosaic submitted a second rebuttal benchmark submission on April 26, 2024. Letter from WilmerHale to Sec'y of Commerce, re: Phosphate Fertilizers From Morocco: Petitioner's Submission of Information to Rebut, Clarify, or Correct OCP's Non-Responsive NFI (Apr. 26, 2024) ("Petitioner's Second Rebuttal Benchmark Submission"). In its second rebuttal benchmark submission, Mosaic submitted new factual information demonstrating that phosphate rock prices from Syria are not suitable as a benchmark. *Id.* at 3, Exhibits 7-13.

11. In March 2024, Commerce issued supplemental questionnaires to OCP and the GOM that included questions regarding certain purchases of land by OCP from the GOM. *See* PDM at 12. On April 26, 2024, simultaneous with the issuance of the *Preliminary Results*, Commerce initiated an investigation into one new subsidy program, the Provision of Port and Vessel Services for LTAR. Memorandum from Bob Palmer and Jaron Moore, Int'l Trade Compliance Analysts, through Kathleen Marksberry, Program Manager, to Irene Darzenta Tzafolias, Director, "Countervailing Duty Administrative Review of Phosphate Fertilizers from Morocco, 2022: New Subsidy Allegations" (Apr. 26, 2024). Commerce found that it was not necessary to initiate a formal investigation into Mosaic's new subsidy allegation regarding the GOM's provision of land for LTAR because it was "currently investigating OCP's land purchases from the GOM." *Id.* at 5.

12. Commerce issued the *Preliminary Results* on April 28, 2023. *See* PDM. Commerce preliminarily determined that three subsidy programs were countervailable and conferred a measurable benefit during the POR. *Id.* at 8-12. Commerce preliminarily calculated a subsidy rate for OCP of 14.21 percent *ad valorem*. *Preliminary Results*, 86 Fed. Reg. at 35,800. Commerce preliminarily found that OCP did not use the Port Services and Infrastructure

5

for LTAR program during the POR and that additional information was needed regarding the Port and Vessel Services for LTAR program and the Land Purchases for LTAR program. PDM at 12-13.

13.     With respect to the Provision of Phosphate Mining Rights for LTAR program in particular, Commerce stated that the GOM did not submit any new information that warranted reconsideration of its prior determination on the countervailability of the program and, consistent with past practice, it preliminarily determined that the program confers a financial contribution and is specific to OCP. *See id.* at 9. To assess the adequacy of remuneration and thereby calculate the amount of benefit under this program, Commerce applied the hierarchy for selecting a benchmark under 19 C.F.R. § 351.511(a)(2). As it did in the investigation, Commerce preliminarily determined that there were no suitable tier one in-country prices for phosphate ore mining rights in Morocco, because the GOM is the sole provider of phosphate mining rights. *Id.* Commerce also preliminarily determined there were no appropriate tier two world market prices for phosphate ore mining rights that would have been available to purchasers in Morocco. *Id.* Commerce therefore conducted a tier three analysis under 19 C.F.R. § 351.511(a)(2)(iii). *Id.* at 9-10.

14.     Consistent with its approach in the investigation, Commerce constructed a world market benchmark for the "underlying good conveyed *via* mining rights (*i.e.*, phosphate rock)." *Id*. at 9. Specifically, Commerce compared the actual per-unit cost buildup that OCP reported for its beneficiated phosphate rock[1] to an average of world market prices for phosphate rock Commerce determined to be comparable to OCP's rock. *See id.* at 9-10; *see also* Memorandum from Jaron Moore, Int'l Trade Compliance Analyst, through Kathleen Marksberry, Program

---

[1] Beneficiation refers to the process of removing impurities such as sand, clay, and other carbonates from phosphate ore.

6

Manager, to File, OCP S.A. Calculations for the Preliminary Results (Apr. 26, 2024) ("OCP Prelim. Calc. Memo.").

15.     Commerce derived a world market benchmark price using 2022 prices for phosphate rock published in the following sources: CRU, Argus Phosphates, Fertecon, and Profercy Phosphates Limited. OCP Prelim. Calc. Memo. at 3. Commerce stated that it limited its analysis to these data sources because of the bone phosphate of lime ("BPL") content or phosphorous pentoxide content, and that Commerce only included benchmark prices made on an FOB basis. *Id.* Commerce treated the sources of benchmark prices and the per-unit benchmark price of phosphate rock that it calculated as confidential. *Id.*

16.     To calculate the benefit for this program in the *Preliminary Results*, Commerce multiplied the difference between its calculated per-unit cost buildup and the benchmark per-unit price of phosphate rock by the total amount of phosphate rock that OCP mined and beneficiated during the POI. PDM at 10. To calculate OCP's per-unit cost build up, Commerce preliminarily took the total mining costs that OCP reported for 2022, including costs that OCP characterized as its 2022 HQ/support costs and its 2022 debt costs. OCP Prelim. Calc. Memo. at 5-6. Commerce added an amount for profit and then divided the sum by the total amount of rock that OCP reported that it produced in 2022. *Id*. at 6.

17.     On September 6, 2024, Commerce issued a memorandum providing interested parties an opportunity to submit benchmark information regarding comparable land purchases based on private (non-expropriation or governmental) transactions in Morocco and inflation rates in Morocco. Memorandum from Faris Montgomery, Senior Int'l Trade Compliance Analyst, to File, Request for Submission of Factual Information (Sept. 6, 2024). Mosaic and OCP submitted land benchmark information on September 23, 2024. Letter from WilmerHale to Sec'y of

Commerce, re: Phosphate Fertilizers From Morocco: Petitioner's Submission of Factual Information to Measure the Adequacy of Remuneration for Land and Inflation in Morocco (Sept. 23, 2024) ("Petitioner's Land Benchmark Submission"); Letter from Covington & Burling LLP to Sec'y of Commerce, re: Phosphate Fertilizer from the Kingdom of Morocco: Land Benchmark Submission (Sept. 23, 2024) ("OCP's Land Benchmark Submission"). Mosaic submitted publicly available information describing completed transactions of land comparable to the land that the GOM provided to OCP. Petitioner's Land Benchmark Submission at 1-2, Exhibits LAND-1 to LAND-10. OCP submitted proprietary land deeds. OCP's Land Benchmark Submission, Exhibits BENCHMARK-2 to BENCHMARK-7.

18. On October 10, 2024, Commerce issued a post-preliminary analysis memorandum regarding the Provision of Land for LTAR program, the Customs Duty Exemptions for Capital Goods, Machinery, and Equipment program, and the Provision of Port and Vessel Services for LTAR program. Memorandum from Kathleen Marksberry, Dir., Office VIII, to Scot Fullerton, Acting Assistant Sec'y, re: Post-Preliminary Analysis of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Kingdom of Morocco; 2022 (Oct. 10, 2024) ("Post-Prelim. Memo."). Commerce found the Provision of Land for LTAR program to be countervailable and used certain of the land benchmarks that OCP submitted to calculate benefit. *Id.* at 3-9.

19. With regard to the Customs Duty Exemptions for Capital Goods, Machinery, and Equipment program, which Commerce had previously countervailed, Commerce found that the program provided a financial contribution and was specific. *Id.* at 9-10. For the calculation of benefit, Commerce stated that it was preliminarily excluding any exemptions for capital goods imported from countries with which Morocco has free-trade agreements. *Id.* at 10. Commerce

8

stated that "the agreements substantiate that OCP and its cross-owned producers would have paid no import duties in the absence of this capital goods program." *Id.*

20. With regard to the Provision of Port and Vessel Services for LTAR program, Commerce only addressed the issue of benefit and made no findings regarding financial contribution or specificity. *Id.* at 11-14. To assess benefit, Commerce preliminarily concluded that there was no tier one or tier two benchmark available and conducted a tier three analysis under 19 C.F.R. § 351.511(a)(2)(iii). *Id.* at 13. In its tier three analysis, Commerce stated that it examined the price-setting methodology of the state-owned port service provider, Marsa Maroc, and concluded that Marsa Maroc's prices are "a market-based system designed to return a rate of return sufficient to ensure future operations for Marsa Maroc" and that Marsa Maroc was in fact profitable during the POR. *Id.* at 14. Commerce therefore preliminarily determined that Marsa Maroc's provision of port and vessel services conferred no benefit to OCP during the period of review. *Id*.

21. Mosaic, OCP, and the GOM filed case briefs and rebuttal briefs on October 16, 2024 and October 21, 2024, respectively. *See* IDM at 3. Mosaic argued in its case brief that Commerce correctly found that OCP receives countervailable subsidies under the Phosphate Mining Rights for LTAR program but erred in calculating the benefit of this program. *See* Letter from WilmerHale to Sec'y of Commerce, re: Phosphate Fertilizers from Morocco: Petitioner's Case Brief (Oct. 16, 2024) ("Petitioner's Case Br.") at 4-30. In particular, Mosaic argued that Commerce erred in including Egyptian phosphate rock prices in the world market benchmark price. IDM at 16-19. Mosaic also argued that Commerce should exclude OCP's reported HQ/support and debt costs in the phosphate rock cost buildup or, in the alternative, use a different allocation methodology. Petitioner's Case Br. at 12-30.

9

22.     With respect to the Provision of Land for LTAR program, Mosaic argued that Commerce erred in using the land benchmarks that OCP had submitted and excluding the land benchmarks that Mosaic had submitted. *Id.* at 30-37. With respect to the Customs Duty Exemptions for Capital Goods, Machinery, and Equipment program, Mosaic argued that Commerce erred in excluding goods imported from free-trade agreement countries to calculate the benefit. *Id.* at 38-41.

23.     Mosaic argued further that Commerce erred by declining to countervail the ANP's provision of port services and infrastructure to OCP for LTAR, because the record evidence demonstrated that this program involved a financial contribution to OCP and that it was *de facto* specific. *Id.* at 41-42, 46-47. Additionally, Mosaic argued that the record evidence demonstrated that the concession fees that ANP charges to OCP for port services and infrastructure are not set in accordance with market principles, and therefore confer a benefit on OCP. *Id.* at 42-46. Mosaic also argued that Commerce should countervail Marsa Maroc's provision of port and vessel services because the record showed Marsa Maroc's prices were not set consistent with market principles. *Id.* at 48-51.

24.     In its rebuttal brief, Mosaic argued that Commerce should reject OCP's arguments for including prices from China, Egypt, and Syria in the phosphate rock benchmark. *See* Letter from WilmerHale to Sec'y of Commerce, re: Phosphate Fertilizers from Morocco: Petitioner's Rebuttal Brief (Oct. 21, 2024) ("Petitioner's Rebuttal Br.") at 7-11.

25.     As noted above, Commerce published the *Final Results* in the Federal Register on November 12, 2024. 89 Fed. Reg. 88,952. With respect to the Provision of Phosphate Mining Rights for LTAR program, Commerce rejected Mosaic's arguments that it should exclude phosphate rock benchmark prices from Egypt and Syria, and certain other benchmark prices for

phosphate rock comparable to OCP's, but Commerce agreed to exclude prices from China that were not on a FOB basis. IDM at 16-19. Commerce also rejected Mosaic's argument that it should exclude the costs that OCP characterized as 2022 HQ/support costs and 2022 debt costs from the cost build-up for phosphate rock, and while Commerce accepted Mosaic's proposal to change the allocation basis for HQ/support costs, Commerce rejected Mosaic's other proposed alternative allocation methodologies for HQ/support and debt costs. IDM at 19-27.

26.     With respect to the Customs Duty Exemptions for Capital Goods, Machinery, and Equipment program, Commerce rejected Mosaic's argument that it erred in excluding capital goods imported from free-trade agreement countries in the benefit calculation. *Id.* at 53. Commerce agreed with Mosaic that "the record supports that some FTAs require documentation regarding the country of origin for goods to be eligible for duty-free treatment," but stated that "we have no record evidence that the specific FTA rates reported by OCP as the duty rate in lieu of the customs duty exemption program were either not available to OCP or inaccurate." *Id.* at 53-54.

27.     Commerce also rejected Mosaic's argument that it erred in preliminarily finding that OCP did not use the Provision of Port Services and Infrastructure for LTAR program during the POR because "ANP did not *per se* provide port services to OCP." *Id.* at 58. Commerce also cited its findings in the prior review that it "examined the methodology that ANP uses when setting concession fees, which indicates that ANP does account for its costs, revenues, and profits when it sets prices" and that this information, in addition to evidence that ANP was profitable in 2022, supported a determination that ANP set the prices in accordance with market principles. *Id.*

28. Commerce also rejected Mosaic's argument that it erred in preliminarily finding the Provision of Port and Vessel Services for LTAR program provided no benefit. *Id.* at 61-62. Commerce found that "Marsa Maroc generated a profit from both the public fee ceilings set by ANP, which Marsa Maroc used for its tariff schedules during the POR, and the bilateral services agreements (BSAs) between OCP and Marsa Maroc." *Id.* at 61. Commerce acknowledged that "port and vessel service fees charged by Marsa Maroc, and within Morocco, differ based on both BSAs and the tariffs charged at the specific port," but found "there is no evidence on the record that any of the fees charged are for LTAR." *Id.* at 62.

29. On December 17, 2024, Commerce amended the *Final Results* to correct a ministerial error. *See Phosphate Fertilizers From the Kingdom of Morocco: Notice of Amended Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 104,979 (Dep't Commerce Dec. 26, 2024).

## STATEMENT OF CLAIMS

### Count One

30. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 29.

31. Commerce's decision in the *Final Results* to include the costs that OCP had characterized as 2022 HQ/support costs and 2022 debt costs in the phosphate rock cost build-up is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law. Commerce's rejection of Mosaic's proposed alternative allocation methodologies for HQ/support and debt costs is also unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law.

### Count Two

32. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 29.

33. Regarding the Phosphate Rock for LTAR program, Commerce's decision in the *Final Results* to include Egyptian and Syrian phosphate rock prices in the phosphate rock benchmark is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law. In addition, Commerce's exclusion of certain prices for phosphate rock of comparable BPL content to OCP's phosphate rock, which Mosaic argued that Commerce should include in the benchmark, is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law.

### Count Three

34. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 29.

35. Commerce's decision to exclude capital goods imported from free-trade agreement countries from the benefit calculation for the Customs Duty Exemptions for Capital Goods, Machinery, and Equipment program is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law.

### Count Four

36. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 29.

37. Commerce's decision not to countervail the GOM's Provision of Port Services and Infrastructure for LTAR program is unsupported by substantial evidence, and otherwise not in accordance with law. Commerce unlawfully found that the ANP set the terms of OCP's concession agreements in accordance with market principles, and that OCP therefore did not receive a benefit under this program. Commerce also unlawfully found that OCP's concession agreements do not "per se" entail provision of services. Commerce also erred in failing to make findings regarding specificity for this program.

### Count Four

38. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 29.

39. Commerce's decision not to countervail the GOM's Provision of Port and Vessel Services for LTAR program is unsupported by substantial evidence, and otherwise not in accordance with law. Commerce unlawfully found that Marsa Maroc's price-setting methodology is in accordance with market principles, and that OCP therefore did not receive a benefit under this program. Commerce also erred in failing to make findings regarding financial contribution and specificity regarding this program.

### **REQUEST FOR JUDGMENT AND RELIEF**

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that the Court:

1) Hold that certain aspects of Commerce's *Final Results* in the second administrative review of the countervailing duty order on phosphate fertilizers from the Kingdom of Morocco for the period January 1, 2022 through December 31, 2022 are not supported by substantial evidence and otherwise not in accordance with law;

2) Remand the *Final Results* to Commerce for disposition in accordance with the Court's final opinion; and

3) Grant such other relief as the Court may deem just and proper.

        Respectfully submitted,

        <u>/s/ Jeffrey I. Kessler</u>
        David J. Ross
        Jeffrey I. Kessler
        Stephanie E. Hartmann
        Alexandra Maurer
        Sydney J. Warren
        Jacob A. Laband

        WILMER CUTLER PICKERING
          HALE and DORR LLP
        2100 Pennsylvania Avenue NW
        Washington, DC 20037
        (202) 663-6612
        jeffrey.kessler@wilmerhale.com

Date:  January 13, 2025